IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| HOWARD NIELSEN | § | |
| v. | § | CIVIL ACTION NO. 6:09cv408 |
| DR. DAVID LANGSTON, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Howard Nielsen, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceedings pursuant to 28 U.S.C. §636(c).

At an evidentiary hearing and in his complaint, Nielsen stated that he came into TDCJ on July 5, 2002, and was seen by a dentist at the Gurney Unit. This dentist told him that he was going to put him on a dental plan to get some dentures. After a number of his teeth have been pulled, however, Nielsen now says that the prison administration is telling him that they cannot give him dentures due to budget cuts. He states that his gums hurt and bleed and he has trouble chewing his food, and he has acid reflux disease.

In a grievance attached to his complaint, Nielsen says that he was promised dentures when he came into the system in 2002, and he was placed on a dental plan which required a number of extractions. Now, he says, due to pain, bleeding, difficulty eating, cutting of the inside of his mouth, and disfigurement, he should be able to get the dentures which were promised to him; he contends that he should be allowed to remain on the dental plan which he was given when he came into prison. The answer to this grievance was that there was no evidence to support his assertion, and according to UTMB Policy W-36.4, a denture has to be approved by the DUQRC Committee which bases its decision on several criteria. The BMI (body mass index) is of high priority with a

1

BMI of 18.5 to 25 being normal. Nielsen's BMI is 30, which is above the norm. The response also says that most foods can be easily digested with minimal mastication and there is little likelihood that dentures would ameliorate gastrointestinal problems.

In his Step Two grievance, Nielsen says that the Step One grievance was wrong in saying that "no evidence exists" because he has been seen by a dentist over 25 times since entering TDCJ. He again says that he was told that he was eligible for dentures in July of 2002, and that in July of 2003, he was examined for "hurting teeth, see about getting dentures or partials." A tooth was extracted at that time. He again says that the policy in effect in 2002 should control, and reiterates that he needs dentures. The response to this grievance says that Nielsen was received into TDCJ in July of 2002, and at that time, inmates had to be in the system for 12 months before they were eligible for routine treatment. His old dental records did not show that he had been given a treatment plan for dentures, as he claimed. His first dental treatment was in July of 2003, when he had tooth no. 1 extracted, followed in September of 2003 when he had tooth no. 16 extracted.[1] The grievance response states that none of these encounters had any mention of dentures. The policy was changed on September 1, 2003, and only those inmates who had a documented dental treatment plan in place, which plan included dentures, were still eligible to receive dentures under the old policy; there was no provision for grandfathering inmates who entered the system before the policy change. Under the current policy, the response says, inmates may still be eligible for dentures if the dentist and a provider feel that there is a medical need for dentures. The case is then referred to the dental utilization review committee (the DUQRC Committee) for review and approval.

After the evidentiary hearing, the Defendants Dr. David Langston and Dr. Owen Murray were ordered to answer the lawsuit and have done so. On December 17, 2010, the Defendants filed a motion for summary judgment limited to the issue of exhaustion, arguing that

---

[1] In the Universal Tooth Numbering system, tooth no. 1 is the furthest-back tooth on the upper right, running to tooth 16 on the upper left; tooth no. 17 is directly below no. 16, running back to no. 32 on the lower right.

2

Nielsen failed to exhaust his administrative remedies. Nielsen filed a response to this motion on January 14, 2011.

On March 25, 2011, the Defendants filed a motion for summary judgment on the merits of the case. Nielsen has filed a response to this motion, and the Defendants have filed a reply to this response.

### The Defendants' Motion Regarding Exhaustion

In their motion for summary judgment concerning the issue of exhaustion, the Defendants state that Nielsen received dental treatment in the form of the surgical extraction of a tooth on December 21, 2007, from Dr. Eliasson. The next mention of dental care in the records is a note saying that as of February 26, 2009, Nielsen did not have a current treatment plan on file. On May 30, 2009, Nielsen submitted a sick call request in which he said that when he originally entered TDCJ, he was told that he was eligible for dentures because of a rare disease that he had (no enamel). He stated that he was trying to receive the dentures promised to him under the policy in effect at the time. In response to this sick call request, the medical staff scheduled him for an appointment on June 2, 2009, but Nielsen did not show up.

Nielsen was rescheduled, and was seen on June 8. At this time, a comprehensive treatment plan was done by Dr. Langston, who also determined Nielsen's plaque index, did oral hygiene cleaning, including a demonstration of brushing and flossing, took X-rays, and provided a fluoride rinse. He told Nielsen that tooth no. 28 would have to be extracted. Dr. Langston also told Nielsen at that time that he did not qualify for dentures under UTMB's policy.

Nielsen had another appointment on September 16, 2009, but failed to show up. On October 6, 2009, he submitted a sick call request complaining that his teeth were hurting, but again failed to show up for an appointment. He was seen the next day, at which time Dr. Langston gave him CHX rinse, took X-rays, and extracted tooth no. 28. This is the last time that Dr. Langston is listed in the medical records as having been Nielsen's dentist. The Defendants state that Nielsen did not file a grievance about the exam of June 8, 2009, or the exam of October 7, 2009; instead, the one

grievance which Nielsen filed concerning his request for dentures was signed by him on May 31, 2009.

The Defendants argue that Nielsen never filed a grievance about Dr. Langston denying him dentures on June 8, 2009, because the grievance which Nielsen filed was before that date. They state that his grievance cannot apply to any earlier visit with a dentist, because the last time that he saw a dentist before that time was on December 21, 2007, and his grievance on May 31, 2009, was well after the 15-day time limit for filing grievances. Thus, they say that Nielsen has failed to exhaust his administrative remedies.

Nielsen's Response to This Motion

In his response, Nielsen says that Dr. Langston was a treating dentist and Dr. Murray was vice president of Correctional Managed Care for the University of Texas Medical Branch and thus was responsible for the implementation and enforcement of dental policies for UTMB. He quotes an affidavit from an individual named Albert Well, which affidavit was filed in another lawsuit in this Court, saying that Dr. Murray has the final say in whether a patient may or may not receive dentures, and is "at the top of the chain of command" with regard to dental issues. Thus, Nielsen says, Dr. Langston and Dr. Murray are proper defendants in the case.

Nielsen argues that the lawsuit is being filed against the policy, and so the individuals named are the policy maker and the person who enforced the policy. He cites Johnson v. Johnson, 385 F.3d 503, 523 (5th Cir. 2004) as saying that a grievance can sufficiently identify a person even if it does not provide an actual name, and an Eleventh Circuit case called Switzt v. City of Wadley, Alabama, 51 F.3d 988, 999 (11th Cir. 1995), which says that liability may be imposed due to the existence of an improper policy or from the absence of a policy.

Nielsen states that he filed Step One and Step Two grievances clearly setting out that his complaint concerned the policy. He says that the response to this grievance validates the fact that he adequately put the defendants on notice as to the nature of his complaint. Nielsen also observes that his grievance was not returned for any violation of grievance processing regulations such as the

15-day requirement. Thus, he concludes that he has adequately exhausted his administrative remedies.

## The Defendants' Motion for Summary Judgment on the Merits

On March 25, 2011, the Defendants filed their motion for summary judgment on the merits. In this motion they state first that from May 24, 2005, to the present, there is no order or plan for dentures for him. On December 18, 2007, he complained of a toothache, but failed to show up for an appointment the next day. He was seen by Dr. Eliasson, and teeth no. 12 and 13 were extracted. There is no indication in the record that Nielsen requested dentures during his visit.

The Defendants state that during the June 8 exam, the records show that Nielsen was five feet six inches tall and weighed 190 pounds. He had gingivitis with inflammation and recession, moderate material alba (deposits of food debris and micro-organisms, particularly at the gum line), moderate calculus (a concretion on teeth) and moderate bone loss. The records do not verify Nielsen's complaints that he had bleeding gums, difficulty chewing, bites or cuts on the inside of his mouth, or the inability to digest food properly. He was missing 13 teeth with plans to extract one more. Of his remaining teeth, the Defendants state that at least 12 are in occlusion, meaning that they come together when the mouth is closed. At this visit, Dr. Langston advised Nielsen that he did not qualify for dentures under UTMB guidelines.

As part of the motion for summary judgment, both Dr. Langston and a dentist named Dr. Billy Horton, the Dental Director for the University of Texas Medical Branch - Correctional Managed Care, have furnished affidavits stating that Nielsen did not meet the criteria for dentures. Dr. Horton explains that since September 1, 2003, TDCJ has had a policy of providing dentures for inmates when "medically necessary," meaning that dentures are provided when the health of the patient would otherwise be adversely affected. The policy instructs dentists to monitor the nutritional status of patients by tracking weight trends for those who may have compromised masticatory functions. As part of this monitoring, the Body Mass Index (BMI) is used as a tracking methodology.

According to the policy, a BMI from 18.5 to 25 is considered normal, and patients with a BMI of 25 or lower which is trending downward, or a patient who is 10 percent or more underweight relative to their ideal body weight, should be referred to the patient's treating physician for consultation. If the physician determines that the patient's nutritional status is compromised, special diets such as a mechanically blended diet may be considered. Dental prostheses for patients with compromised masticatory function should be considered following initiation and follow-up evaluation of the effectiveness of the special diet. CMC Policy E-36.5 provides for a dental utilization / quality review committee to address concerns about the dental care provided to inmates.

Dr. Horton states that in his opinion, dentures for Nielsen were "completely unnecessary." He notes that the medical records contain no indication that Nielsen complained of bleeding gums, difficulty chewing, bites or cuts on the inside of the mouth, or inability to digest food in either of his visits to Dr. Langston. In the June 8, 2009 visit, Nielsen's complaints concerned gum disease which had been caused by poor brushing and flossing in the past rather than the lack of dentures. Nielsen had a BMI of 31, well above the healthy range of 18.5 to 25, and is not losing weight; since the filing of the lawsuit, he has been prescribed a "Diet for Health" and a medication called Zantac to help him with acid reflux. Dr. Horton concludes that there is no medical necessity for providing Nielsen with dentures.

Dr. Langston's affidavit says that he has examined Nielsen's medical records going back to May of 2005, and none of these records contain an order or plan for dentures; he states that he does not have access to records older than that. He describes his visits with Nielsen and says that the medical records show that dentures were not necessary.

Policy E-3.64 and E-3.65 provide that if a dentist or physician completes a form stating that the patient has a medical need for dentures, the recommendation is forwarded to the committee for review; however, in this case, no unit dentist or physician ever completed such a form.

The Defendants argue that they were not deliberately indifferent to Nielsen's medical needs because the evidence showed that dentures were not medically necessary. In addition, they

state that Dr. Murray has never seen Nielsen and cannot be held liable on a theory of *respondeat superior*, nor was Nielsen's request for dentures ever brought to Dr. Murray's attention prior to the filing of the lawsuit.

Next, the Defendants contend that they are entitled to qualified immunity from claims for monetary damages because they acted in an objectively reasonable manner. They further assert that Nielsen is not entitled to injunctive relief because there was no constitutional violation. Finally, the Defendants maintain that any claim which Nielsen may raise which accrued before September 2, 2007 are barred by the statute of limitations.

<u>Nelson's Response to the Motion</u>

In his response to the motion for summary judgment, Nielsen says that in 2002, he was seen by a dentist at the Gurney Unit who claimed that he put Nielsen on a dental plan to obtain dentures. After he had a number of teeth extracted, however, he was told that he could not be provided with the dentures that he had been promised.

Nielsen contends that he is not filing a complaint regarding an office visit or challenging the competence of a dentist, but rather a complaint with regard to the policy itself, which he says was changed after treatment began. He says that deliberate indifference may be shown by proving a policy of deficiencies in staffing or procedures such that the inmate is effectively denied access to adequate medical care, and says that because of their positions, both Dr. Murray and Dr. Langston may be subjected to injunctive relief in the form of an order to provide him with dentures.

After setting out the legal standards applicable to injunctions, Nielsen says that he was promised dentures and that but for this promise, he would not have consented to the extraction of his teeth. He says that his Eighth Amendment claim is based on the fact that he has toothaches and cuts and sores in his mouth, and cites a Second Circuit case called <u>Chance v. Armstrong</u>, 143 F,3d 698 (2nd Cir. 1998), in which the court held that a cognizable claim of inadequate dental care can be based on various factors including pain or the inability to engage in normal activities. In that case, the Second Circuit reversed a holding by the district court that the plaintiff had failed to state

7

a claim upon which relief could be granted, but noted that "it may become clear, at summary judgment or some later stage in the litigation, that these claims are not adequately supported."

Next, Nielsen asserts that a "conflict of interest" may exist with regard to the Defendants' affidavits. He points to an article in the Prison Legal News, which he styles as a "reputable publication concerning prison litigation," stating that according to U.S. District Judge William Wayne Justice, the prison health care system was "constitutional – but just barely." Nielsen also cites the Prison Legal News as saying that "a lack of funding has made it impossible to repair either the building or the system," that following the settlement in the Ruiz prison reform case, the University of Texas Medical Branch and the Texas Tech Health Science Center were given a fixed annual budget for prison health care and told that thy could keep what they did not spend, and prison physicians were given bonuses for saving money and thus "rewarded for denying prisoners needed care." He says that the Prison Legal News also reported that the Texas State Auditors Board concluded in 2004 that the state's correctional managed health care committee was plagued with conflicts of interest, and that because of these factors, surgery and treatment were often postponed and cheaper drugs were used.

Nielsen seeks to distinguish cases on deliberate indifference cited by the Defendants by arguing that his claim is not regarding dissatisfaction with treatment, but over the fact that the policy was changed during his treatment, which stopped the treatment that he was receiving. He says that Wells' affidavit, filed in another lawsuit in this Court, says that the policy was changed for budgetary reasons and states that if the defendants present the prothesis policy in effect in 2002 and his dental records from the same time, it will prove all of his allegations.

Nielsen cites Fifth Circuit denture cases such as Huffman v. Linthicum, 265 Fed.Appx. 162, 2008 WL 341573 (5th Cir., Feb. 6, 2008); Vasquez v. Dretke, 226 Fed.Appx. 338 2007 WL 756455 (5th Cir., March 9, 2007); and Scribner v. Linthicum, 232 Fed.Appx. 395, 2007 WL 1228552 (5th Cir., April 26, 2007). In Huffman, the petitioner alleged that he suffered from "intense physical pain, swollen gums, weight loss, disfigurement and stomach pain" due to the

failure to provide him with dentures. The district court dismissed the claims as frivolous without ordering an answer, but the Fifth Circuit reversed, holding that the plaintiff's claims were not "indisputably meritless." After the reversal, the district court ordered the defendants to answer, and a motion for summary judgment was filed.

After reviewing this motion and the summary judgment evidence, the district court determined that Huffman had not met the criteria for receiving dentures and that the defendants had not been deliberately indifferent to his serious medical needs. The district court also determined that the TDCJ denture policy was not so deficient as to act as a deprivation of the plaintiff's constitutional rights. Consequently, the district court granted the motion for summary judgment and dismissed the lawsuit. No appeal was taken from this dismissal. *See* Huffman v. Linthicum, civil action no. 4:06cv308 (S.D.Tex., dismissed January 29, 2009).

In Vasquez v. Dretke, the plaintiff stated that because he has no dentures, he suffers from difficulty eating, headaches, disfigurement, severe pain, bleeding in his mouth, and blood in his stool. The district court dismissed the claims as frivolous or for failure to state a claim upon which relief may be granted, but the Fifth Circuit reversed. In so doing, the Fifth Circuit stated as follows:

> As the dentists have not yet responded to Vasquez's complaint, it is not apparent beyond doubt that Vasquez can prove no set of facts consistent with his claim that would allow him relief against the dentists; it is possible that the dentists knew of and deliberately disregarded Vasquez's alleged serious medical need. Thus, Vasquez's claims against Wells and Collins are not frivolous, nor appropriate for dismissal. [citation omitted]
>
> In so ruling, we express no opinion on the ultimate merits of the case. The Magistrate Judge may determine at summary judgment that no Eighth Amendment violation occurred, for several reasons. For example, it is unclear whether Collins and Wells were aware of all of Vasquez's alleged symptoms. In addition, even if they knew of Vasquez's complaints, it is possible that in the dentists' medical judgment, dentures would not have helped Vasquez. With only the statements of Vasquez, however, we cannot say the cause is frivolous, and that is all we hold.

After the remand, the district court set the case for trial but the plaintiff did not appear, and so the case was dismissed. No appeal was taken. *See* Vasquez v. Dretke, civil action no. 6:05cv51 (E.D.Tex., dismissed August 13, 2007).

Unlike Huffman and Vasquez, Scribner v. Linthicum is a summary judgment case. There, the plaintiff sued the director of medical services alleging that she was deliberately indifferent to his serious medical needs. The district court dismissed the case on summary judgment, holding that there was no evidence that the medical director was aware of Scribner's complaints, but the Fifth Circuit noted that Scribner had stated that he wrote to the director about his problems, and she did not deny receiving the letter. In addition, there was evidence to show that the defendant had given final approval to the policy. In reversing the case, however, the Fifth Circuit expressed no opinion on the ultimate validity of Scribner's complaint, and noted that the contours of the prison policy and Scribner's need for dentures had not been completely developed by either party. Following the remand, the plaintiff filed a motion to dismiss the lawsuit, acknowledging that he was seeking only injunctive relief and had been released from TDCJ, so his claims were moot. This motion was granted and the lawsuit was dismissed without prejudice. *See* Scribner v. Linthicum, civil action no. 1:04cv409 (E.D.Tex., dismissed August 2, 2007).

## Legal Standards and Analysis

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to

admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some

metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Little, 37 F.3d at 1075.

The movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. John v. State of Louisiana Bd. of Trustees for State Colleges and Universities, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). As for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial. Stults, 76 F.3d at 656; *see also* Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

## Application of the Standards to the Facts

In this case, the evidence shows that Nielsen received dental care dating back to 2002, but there is no evidence that a written dental plan to provide him dentures was ever prepared The response to the Step Two grievance attached to Nielsen's complaint specifically say that his dental records contain no indication that a denture plan was ever done, and Nielsen does not dispute this; he says only that the dentist he saw in 2002 promised him dentures and that he was told at that time that he qualified for dentures. In addition, a review of the records dating back to 2005 contains no mention of a plan for dentures. Because Nielsen did not have a plan for dentures in place at the time

that the policy changed, in September of 2003, he is not entitled to have the pre-2003 policy applied to his case; the verbal promises which he received prior to that time are not sufficient.

Nielsen argues that the records of the dental plan from 2002 will show that he qualified for dentures under that plan, but the relevant question is whether a dental plan was ever created for him to actually receive dentures, such plan being in existence when the policy changed in September of 2003. The evidence shows that regardless of what Nielsen may have been told, no such plan was ever created.

The Defendants argue that to the extent that Nielsen seeks to rely on these 2002 promises, his claim is also barred by the statute of limitations. The limitations period begins to run on the date that the action arose, for all prison claims arising after September 1, 1987. *See* Burrell v. Newsome, 883 F.2d 416, 420 (5th Cir. 1989). While any claims that Nielsen may raise for incidents occurring in 2002 and 2003 are in fact barred by limitations, Nielsen specifically disclaimed any intent to raise such claims; rather, he said that his lawsuit was focused on the policy itself.

With regard to Nielsen's claims concerning the policy, the evidence shows that Nielsen was denied dentures because he did not meet the criteria set out by TDCJ policy, which requires a finding that the health of the patient would otherwise be adversely affected. To assist in making this decision, the inmate's body mass index is used as a tracking methodology. A BMI from 18.5 to 25 is considered normal, and so inmates with a BMI of 25 or lower which is trending downward, or an inmate who is 10 percent or more underweight relative to his ideal body weight, should be referred to the treating physician for consultation. If the physician determines that nutritional status is compromised, a special diet such as a blended diet can be considered.

In this case, the evidence showed that Nielsen had a BMI ranging between 30 and 31, which is well above the normal range of 18.5 to 25. Neither his treating physician nor his treating dentist ever concluded that his nutritional status was compromised as a result of the lack of dentures. Thus, no request for dentures was ever sent to the dental utilization / quality review committee.

The medical records show that Nielsen received treatment for his dental issues, including completion of a treatment plan, measurement of the plaque index, providing oral hygiene instructions, taking X-rays, and extractions when necessary. The dental exams showed that Nielsen had sufficient occluded teeth to chew and that the problems of which he complained at the visit on June 9, 2009, were caused by poor dental hygiene rather than a lack of dentures. Thus, Dr. Langston, who examined and treated Nielsen, and Dr. Horton, who reviewed Nielsen's medical records, both determined that dentures were not medically necessary.

While Nielsen disagrees with this determination, the Fifth Circuit has stated that simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton v. Dimazana, 122 F.3d 286, 293 (5th Cir. 1997). In order to prevail on an Eighth Amendment claim regarding medical care, the plaintiff must show more than a disagreement, or that the defendants were negligent; instead, the Fifth Circuit has explained that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton, 122 F.3d at 291.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and

medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Here, the medical records show that Nielsen was examined numerous times for his complaints of dental problems, and he received treatment as set forth above. To the extent that Nielsen is challenging the actual treatment which he received, he has not shown that the dental personnel refused to treat him, ignored his complaints, or intentionally treated him incorrectly; on the contrary, his complaint is that he believed that he needed dentures, while the licensed medical professional who examined him believed that he did not need dentures and he did not meet the criteria set out in the TDCJ denture policies. Nielsen has not shown that his disagreement rises to the level of deliberate indifference to his serious medical or dental needs, and so his claim on this point is without merit.

Huffman and Vasquez, cited by Nielsen, both involve dismissals of lawsuits as frivolous, prior to service of process or receipt of an answer from the defendants. In both of those cases, the Fifth Circuit expressed no opinion as to the ultimate merits of the claims; in Vasquez, the Fifth Circuit specifically left open the possibility that the case could be found meritless at the

15

summary judgment stage. In the present case, the Court did not find Nielsen's claims to be frivolous, but required the Defendants to answer, and the case is now at the summary judgment stage.

In Scribner, which was a summary judgment case, the Fifth Circuit concluded that the contours of the policy had not been adequately developed, and reversed on that basis; the appellate court specifically expressed no opinion on the ultimate merits of the claims. In the present case, the Defendants' motion for summary judgment included a copy of the policy at issue, as well as an affidavit from Dr. Billy Horton discussing this policy. Nielsen does not show nor even allege that the contours of the policy have not been adequately developed on summary judgment.

This is particularly important because Nielsen specifically says that he is challenging the validity of the policy itself, indicating that it was put into effect for budgetary reasons and that the policy itself is unconstitutional in that it results in the infliction of cruel and unusual punishment. No Fifth Circuit case has yet addressed the validity of the TDCJ denture policy. In Steele v. Thaler, civil action no. 4:09cv4076, 2011 WL 739524 (S.D.Tex., February 22, 2011), the Southern District of Texas stated as follows:

> Plaintiff, however, has not shown that his constitutional rights were violated by the application of this policy. Moreover, no federal court in Texas has yet held dental policy E-36.4 is unconstitutional; "on the contrary, the Southern District has concluded that the policy is not unconstitutional, nor is the policy so deficient that it acts as a deprivation of constitutional rights." Gibson v. Langston, civil action no. 6:10cv136, 2011 WL 42897 at *6 (E.D.Tex, Jan. 6, 2011) (agreeing with the opinions in Huffman v. Linthicum, civil action no. H-06-0308, 2009 WL 243000 (S.D.Tex., Jan. 29. 2009) (opinion after remand) and Foxworth v. Khoshdel, civil action no. H-07-3944, 2009 WL 3255270 (S.D.Tex., Sept. 28, 2009) that the denture policy is not unconstitutional.
>
> The Court is not insensitive to plaintiff's claims and sympathizes with the frustration, inconvenience and discomfort that he endures without dentures. Nevertheless, plaintiff has not shown that the policy of providing dentures only when there is a medical necessity amounts to a repudiation of his constitutional rights. At best, he has shown that he disagrees with the conclusion that there is no medical necessity in his case; his disagreement with that assessment does not provide a basis for a meritorious constitutional claim.

As in Gibson, this Court agrees with the Southern District that the denture policy itself is not unconstitutional and does not operate as a repudiation of inmates' constitutional rights. While the policy may be more restrictive in its definition of what constitutes a medical need than

16

Nielsen believes appropriate or proper, this by itself does not render the policy unconstitutional, nor does the fact that Nielsen does not qualify for dentures under the current policy, but might do so under a different policy.

Furthermore, Nielsen has not shown that the denial of dentures to him, pursuant to the policy, constituted deliberate indifference to his medical needs. As noted above, both Dr. Langston and Dr. Horton determined that he did not need dentures; in fact, Dr. Horton's affidavit opined that dentures were "completely unnecessary." Nielsen's complaint in essence revolves around his disagreement with this assessment, and as such, he has failed to show a constitutional violation.

The relief sought by Nielsen is primarily injunctive; he says that "I want my dentures, and all my legal fees and filing fees paid for." In order to obtain injunctive relief from the state or from state officials acting in their official capacities, a plaintiff must prove a deprivation of his constitutional rights pursuant to an official state policy. Kentucky v. Graham, 473 U.S. 159, 165-67, 105 S.Ct. 3099 (1985); Grandstaff v. City of Borger, 767 F.2d 161, 169 (5th Cir. 1985). In this case, Nielsen has not shown a deprivation of his constitutional rights pursuant to an official state policy, but only that he disagrees with the determination of the TDCJ dental personnel that he did not have a medical necessity for dentures. This is not sufficient to show entitlement to injunctive relief.

Nielsen asserts that a "conflict of interest" exists with regard to the Defendants' affidavits because according to an article in a magazine called the Prison Legal News, the Texas Correctional Managed Health Care program was placed on a fixed annual budget, and the administrators could "keep what they did not spend." It is hardly unusual for state agencies to have annual budgets, or to seek to control costs. Nielsen has failed to show that any alleged "conflict of interest" exists which is sufficient to render inadmissible the affidavits attached to the Defendants' motion for summary judgment. This contention is without merit.

17

Finally, the Defendants invoke the doctrine of qualified immunity. However, as the Fifth Circuit has explained, neither sovereign nor qualified immunity prevent a prisoner from pursuing declaratory and injunctive relief. Mayfield v. Texas Department of Corrections, 529 F.3d 599, 606 (5th Cir. 2008). Because Nielsen seeks only injunctive relief, together with an award of court costs, the doctrine of qualified immunity does not apply.

Conclusion

The Court has carefully examined the record in this cause, including all of the Plaintiff's pleadings and documents, the Defendants' motion for summary judgment, the Plaintiff's response thereto, all of the summary judgment evidence submitted by the parties, and all other documents and records in the case. Upon such review, the Court has determined that there are no disputed issues of material fact and that the Defendants are entitled to judgment as a matter of law. from suit. The Defendants' motion for summary judgment on the merits on the claims should be granted; the question of exhaustion of administrative remedies need not be addressed. It is accordingly

ORDERED that the Defendants' motion for summary judgment dated March 25, 2011 (docket no. 46) is hereby GRANTED. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice. The plaintiff Howard Nielsen having objected to the sealing of his records, stating that he does not need protection for his personal medical information and wishes that these be made part of the public record in the case, it is further

ORDERED that any and all other motions now pending in this case, specifically including but not limited to the Defendants' motions to seal, are hereby DENIED.

**So ORDERED and SIGNED this 31st day of May, 2011.**

*[Signature: John D. Love]*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE